IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 13, 2004 Session

## DEBORAH B. HALL BYRD v. DANNY K. BYRD

**A Direct Appeal from the Chancery Court for Tipton County**
**No. 20,998     The Honorable Martha B. Brasfield, Chancellor**

**No. W2004-00796-COA-R3-CV - Filed December 21, 2004**

This is an appeal from a decree of legal separation, involving issues of division of marital property and debt, alimony, and attorney fees. Wife appeals. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

J. Thomas Caldwell of Ripley for Appellant, Deborah B. Hall Byrd

T. D. Forrester of Covington for Appellee, Danny K. Byrd

### OPINION

Danny K. Byrd ("Husband," "Defendant," or "Appellee") and Deborah B. Hall Byrd ("Wife," "Plaintiff," or "Appellant") married on October 12, 2002. Prior to the marriage, the parties had lived together since sometime in 2001. At the time of the marriage, Wife was forty-seven years old and Husband was forty-four years old. There were no children born to this marriage.

In approximately 1998, Wife suffered an injury, which resulted in 22.5% permanent impairment to her arm. She received a worker's compensation settlement of $9,700.00. At the time of the marriage, Wife was unemployed. She had been employed prior to the marriage but only worked until on or about June 8, 2001. Husband is employed at Dale Smith a/k/a Industrial Painting and has been working there for approximately twenty years as a superintendent doing sand-blasting and painting work on large industrial sites. When Husband's work required travel, the parties lived in Husband's camper.

Prior to the marriage, Wife's 1982 CLAS Model 66X mobile home was placed in the joint names of the parties. Husband asserts that he performed substantial work and expended monies making repairs to the mobile home, which included a new fiberglass roof, new wood, painting, floors, carpets, linoleum, and adding a back porch.

On or about March 12, 2002, Husband pledged the mobile home as security for an $8,500.00 loan from Tipton Bank & Trust. Husband claims that Wife was aware of this transaction and that the loan was to buy a lot from Wife's mother and her boyfriend, Bubba Morris. Dale Smith, Husband's employer, testified that Husband and Wife had approached him wanting to borrow $8,000 to buy a lot from Bubba Morris. Although Dale Smith did not loan the money himself, he arranged financing at Tipton Bank & Trust and signed a Guaranty. Dale Smith held the monthly Tipton Bank & Trust payment out of one of Mr. Byrd's weekly paychecks each month. This arrangement continued until the loan was paid in full on January 5, 2004. Husband testified that he received the Tipton Bank Trust loan in cash and gave Wife $8,000 with the understanding that Wife would be taking the money to her mother for purchase of the lot.

Wife acknowledged that Husband did not read and write very well. Wife admitted that Husband hardly ever wrote checks and that she handled the payment of the bills. Dale Smith, Husband's employer, testified that prior to the marriage, Husband had dealt in cash and that he didn't know if Husband had a bank account. After the marriage, Husband would cash his check from work and give money to Wife to take care of bills.

In December 2002, Husband received a Christmas bonus from his employer in the net amount of $2,107.00 and testified that he gave Wife $2,000 for deposit to their account. Wife claimed that Husband lost the money at the casinos in Tunica. In January 2003, Husband and Wife purchased a used 2000 Chevrolet pickup truck. Husband signed a check for $3,000 down payment. Husband testified that he thought there were sufficient funds in the bank account to cover the check, especially in light of the $2,000 deposit he thought Wife made. Wife claims that Husband knew there was not enough money in the account to cover the check because he had not been working as many hours. Wife claimed to have borrowed, from Heights Finance, money secured by her Camaro to cover the $3,000 check on Husband's truck. Husband claimed to have no knowledge of this loan.

On or about March 16, 2003, the parties separated. Wife wrecked and totaled the Camaro after the separation and the insurance money was paid directly to Heights Finance, the lienholder. Thereafter, Wife purchased a 2003 Ford Mustang with the assistance of her stepfather. The parties acquired a washer and dryer, refrigerator, and satellite dish during the marriage, which the Husband agreed Wife could keep.

On April 24, 2003, Wife filed a "Complaint for Legal Separation" (the "Complaint") In the Complaint, Wife alleged disability due to her shoulder injury. She asked for an order of rehabilitative support, including maintenance of medical coverage, and for restoration of property owned prior to the marriage. She alleged indigency and asked for an award of attorney fees and

costs. Wife was allowed to amend the Complaint on May 9, 2003 to ask for an award of funds to pay for a shoulder operation.

On May 21, 2003, Husband filed his "Answer and Counter-Complaint," alleging that Wife had taken advantage of his illiteracy and had dissipated his earnings. He asked for an absolute divorce. Wife filed her "Answer to Counter-Complaint" on May 23, 2003. The case was heard on Wife's application for medical expenses on May 23, 2003 and an Order was entered on that date, requiring Husband to pay Wife's car payment, the payment on the mobile home, and utilities for a period of three months. Husband was also ordered to pay $675.00 toward the deductible amount on Wife's shoulder operation.

This matter was heard by the court, sitting without a jury, on February 12, 2004. On March 8, 2004, the trial court entered its "Decree of Legal Separation," which reads, in pertinent part, as follows:

> IT APPEARING to the Court that the Defendant is guilty of inappropriate marital conduct;
>
> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by this Court that the Plaintiff is granted a legal separation from the Defendant pursuant to T.C.A. §36-4-102.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff/Wife shall receive complete and absolute ownership of the 1982 "CLAS" mobile home, and Defendant/Husband shall receive complete and absolute ownership of his camper.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant/Husband shall reimburse Wife and/or pay the veterinarian bill incurred by Wife in regard to the parties' dog, on which she allegedly paid payments on or around May 12, 2003. Plaintiff/Wife shall produce documentation to Defendant/Husband substantiating the bill and the payments she made prior to him being required to pay this obligation.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant/Husband shall maintain his group medical insurance on Plaintiff/Wife so long as it is available to him for a period of two (2) years, and Defendant/Husband shall pay transitional alimony to Wife in the sum of $200.00 per month for a period of six (6) consecutive months, at which time said transitional alimony payments shall cease and terminate.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that each party shall be responsible for their own attorney fees, and Defendant/Husband shall be responsible for the court costs arising from this matter.

Wife appeals and raises three issues for review as stated in her brief:

I. Whether the court erred in its order for division of property and debt.

II. Whether the Court erred in failing to award Wife rehabilitative support.

III. Whether the Court erred in failing to award Wife her reasonable attorney fees incurred in prosecution of the case.

We first note that, since this case was tried by a court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

## Division of Marital Property and Debt

Although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. ***Bookout v. Bookout***, 954 S.W.2d 730, 731 (Tenn. Ct. App.1997). Thus, an equitable division of marital property need not be an equal division of the property. ***Id***. A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. ***Ford v. Ford***, 952 S.W.2d 824, 825 (Tenn. Ct. App.1997). Guidelines for the equitable division of marital property are set forth in T.C.A. § 36-4-121(c)(Supp.2004). That statute provides, in relevant part:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:
(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate

property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Courts allocate marital debt as they do marital assets, and debt which is classified as "marital" should be considered in arriving at an equitable division of property. *See Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App.1996). In *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App.1989), this Court listed three factors that a court should weigh when dividing marital debt: (1) which party incurred the debt and the debt's purpose, (2) which party benefitted from incurring the debt, and (3) which party is best able to assume and repay the debt. *Id.* at 773 (citations omitted).

Wife asserts that the trial court erred in not making an equitable division of the marital debt. From the record, it appears that Wife came into the marriage with the following assets and debts:

(1) A 1994 Camaro with at least $2,000 indebtedness. This indebtedness was paid off during the marriage.

(2) An undivided one-half interest in the mobile home, which was owned jointly with Husband. The evidence indicates that relatively substantial sums were spent during the marriage on repairs to this mobile home. The testimony is that Husband used the mobile home to secure an $8,500 loan. During the pendency of these proceedings, Husband continued to service this debt until it was paid in full.

(3) Various furnishings and jewelry.

Husband came into the marriage with a camper and his one-half undivided interest in the mobile home. The trial court awarded Wife the mobile home and the Mustang she had purchased during the separation. No proof was offered as to the indebtedness on the Mustang but Wife contends that her stepfather makes the payments. Husband was awarded the camper and the truck that was purchased during the marriage. The evidence shows that there is approximately $19,000 in indebtedness on the truck for which Husband is solely responsible.

Wife contends that she pledged the Camaro on a $3,000 loan from Heights Financial made to cover a check written as a down payment for Husband's truck. When she wrecked her Camaro,

the insurance payment of $3,339 went directly to Heights Financial as the lienholder; however, Wife contends that she still owes Heights Financial $4,063. The record is unclear how the debt became so large but it is undisputed that the down payment on Husband's truck was only $3,000. Wife contends that the trial court erred in not giving all, or a portion of, the remaining debt to Husband. She also contends that she lost her stored furnishings because she could not pay the storage fee; that she pawned her jewelry for $1,000 to pay living expenses and lost the jewelry by forfeit when she could not repay the debt; and that she owed her stepfather $350, which was borrowed to pay one of Husband's truck payments.

In reviewing those factors applicable here, this clearly was a marriage of short duration. In such cases, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position as they were before the marriage. ***Batson v. Batson***, 769 S.W.2d 849, 859 (Tenn. Ct. App.1988). In terms of the marital indebtedness, it is clear that the trial court implicitly intended for the parties to pay the separate loans on their vehicles. In terms of the $3,000 loan Wife allegedly took to secure the down payment on Husband's truck, there is dispute in the record. Husband contends that he had no knowledge of this loan until after the separation and that he thought that there were sufficient funds in the checking account to cover the $3,000 down payment, especially in light of the Christmas bonus he had just received. In this case, the question of what constitutes the marital debt is largely one of credibility. It is well settled that when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. ***McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***Id***.; ***In re Estate of Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997). From the record before us, we cannot say that the trial court erred in its allocation of marital debt.

In terms of the division of marital property, the fact that Wife came out of the marriage with full ownership of an improved mobile home in fact puts her in a better position than she was prior to the marriage. However, in reviewing the division of marital property and debt in the context of the relevant factors here and especially in light of the very short duration of this marriage, we find that the trial court's holding results in an equitable division with the parties being closely restored to their pre-marital status.

## Rehabilitative Alimony

Because the amount, if any, and type of alimony to be awarded is within the sound discretion of the trial court in view of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. ***Lindsey v. Lindsey***, 976 S.W.2d 175, 180 (Tenn. Ct. App.1997). The factors to be considered in deciding whether to award alimony are contained in Tenn.Code Ann. § 36-5-101(d)(1)(E) (Supp. 2004) and include:

(i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;

(ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(iii) The duration of the marriage;

(iv) The age and mental condition of each party;

(v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(vii) The separate assets of each party, both real and personal, tangible and intangible;

(viii) The provisions made with regard to the marital property as defined in § 36-4-121;

(ix) The standard of living of the parties established during the marriage;

(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Here, the trial court ordered Husband to pay Wife $200.00 per month for six months. The trial court categorized these payments as "transitional alimony". T.C.A. § 36-5-101(d)(1)(D) indicates that transitional alimony "is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding...."

Considering the above factors in light of the facts of this case, we cannot say that the trial court erred in awarding transitional alimony in this case. This was a marriage of very short duration. Wife claims, *inter alia*, that she is unable to work due to a shoulder injury. Because this injury pre-existed her marriage, however, any economic disadvantage due to her inability to work is not attributable to the marriage. Furthermore, Husband was ordered to and, in fact, did pay $675 toward the deductible for surgical repair of Wife's injury; however, at the time of the hearing, Wife had not undergone the surgery. Both parties are somewhat equal in terms of their education. In fact, the evidence indicates that Wife is, in fact, the more educated of the two in that she is not illiterate. Wife had been employed to some extent until a short time before the marriage and there is no evidence

to suggest that Wife is not as capable of working now as she was at the time of the marriage. In short, Wife has a history of marginal earnings and this history was in place well before her marriage. When taken in the aggregate, the facts of this case support the trial court's decision to award $200.00 per month in transitional alimony.

## Attorney Fees

It is well settled that an award of attorney fees constitutes alimony in solido. ***See Herrera v. Herrera***, 944 S.W.2d 379, 390 (Tenn. Ct. App.1996). The decision whether to award attorneys' fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." ***Kincaid v. Kincaid***, 912 S.W.2d 140, 144 (Tenn. Ct. App.1995); ***see also*** Rule 13(d) Tenn. R.App. P. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d), see *supra*. A spouse with adequate property and income is not entitled to an award of alimony to pay attorneys' fees and expenses. ***Umstot v. Umstot***, 968 S.W.2d 819, 824 (Tenn. Ct. App.1997); ***Duncan v. Duncan***, 686 S.W.2d 568, 573 (Tenn. Ct. App.1984). These awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. Ct. App.1992), or would be required to deplete his or her resources in order to pay these expenses. ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App 1980). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App.1980); ***Palmer v. Palmer***, 562 S.W.2d 833, 839 (Tenn. Ct. App.1977); ***Ligon v. Ligon***, 556 S.W.2d 763, 768 (Tenn. Ct. App.1977).

Here, Husband has the means to provide a portion of Wife's attorney fees, and Wife continues to have some need of assistance in paying her attorney's fees in order to avoid a depletion of assets that the trial court awarded. Consequently, we hold that the trial court erred in not awarding Wife at least some portion of her attorney's fees.

For the foregoing reasons, we reverse the Order of the trial court to the extent that it requires both parties to pay their attorney fees. We remand the matter for a determination of attorney fees to be awarded to Wife. The trial court's Order is affirmed in all other respects. Costs of this appeal are assessed one-half to the Appellant, Deborah B. Hall Byrd, and her surety, and one-half to Appellee, Danny K. Byrd.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.